**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHAEL LEONARD,

    Plaintiff,

v.

                                                  Case No. 1:17-cv-09259

DAVID J. SHULKIN, AS SECRETARY,
U.S. DEPARTMENT OF
VETERANS AFFAIRS,
Defendant.

---

PLAINTFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Philip S. Holloway
RANDOLPH & HOLLOWAY, LLC.
53 West Jackson Blvd. Suite 1234
Chicago, IL 60604
Phone: (312) 663-1560
Fax: (312) 277-7432
Email:  justin@randolph-holloway.com

## I.    INTRODUCTION

The Agency ("Defendant" or "VA") has already decided for itself that Steven Thurman ("Thurman"), the former Acting Chief of VA Hines Medical Center is a serial violator of Title VII's prohibition against retaliation. The Agency found that Thurman violated officers' civil rights on at least eight occasions over five cases for acts occurring between 2011and 2013, the same time period as the events at issue in this case. In June 2015 the Defendant finally had enough of Thurman's repeated violations of Title VII and suspended him for 14 days for illegally retaliating against an officer under his command. Contemporaneous with Thurman's admitted retaliatory conduct against other officers, Thurman proposed Plaintiff's removal. There can be no dispute that, without Thurman's proposed removal, Plaintiff could not and would not have been terminated. With full knowledge of these undisputed facts, the Defendant's motion for summary judgment seeks to excise Thurman from Plaintiff's termination entirely and further seeks to cast Joan Ricard ("Ricard") the former Acting Director of VA Hines Medical Center as the only individual responsible for Plaintiff's termination. To that end, the Defendant relies on a declaration from Ricard, a declaration whose primary feature is its striking disregard for and conflict with Ricard's and Thurman's prior sworn testimony concerning the matters at issue in this case. Further, the Defendant studiously ignores that the cited reasons for Plaintiff's termination were completely unsupported by any evidence whatsoever and were therefore pretextual. Finally, the Defendant completely glosses over the fact that other non-African American officers and/or officers without protected activity engaged in behavior far more serious than that alleged against Plaintiff and none of these officers were investigated, let alone terminated. Defendant's motion for summary judgment should be denied.

1

## II.    SUMMARY OF FACTS

Michael Leonard ("Leonard" or "Plaintiff") is an African American man who was employed by the Department of Veterans Affairs for about 24 years. He began as a patrol officer and worked his way up to the rank of Captain as a Criminal Investigator for Hines VA Medical Center ("Hines VAMC"). Leonard received performance awards and consistently performed up to, and beyond, the standards set for him by his supervisors and there were no complaints about his performance or his investigations. [PSOF ¶1][1] In addition to serving as a Criminal Investigator at Hines VAMC, Leonard also performed other duties for Hines VAMC and the Department of Veterans Affairs. [PSOF ¶2] Cary Kolbe ("Kolbe"), a younger White police officer at Hines VAMC with a checkered law enforcement history, threatened Captain Leonard while Leonard was conducting his duties. Kolbe angrily said, in the presence of other officers, "I'll kill that old man" referring to Leonard. [PSOF ¶¶3, 27-32] Instead of terminating Kolbe, the Agency issued an admonishment to Leonard while Kolbe had not been disciplined at all. [PSOF ¶3] In March 2012. Plaintiff filed an EEO action because Leonard was disciplined while Kolbe was not. [PSOF ¶4] In May 2012, Thurman became the Acting Chief of Police at Hines VA. [PRSOF ¶7]] Upon Thurman's arrival at Hines VA, he made threatening remarks to Plaintiff (and other officers). Thurman claimed the Agency brought him in to terminate Plaintiff and other officers who had filed EEO complaints and that he would fight EEOs "tooth and nail." Thurman even asked for a list of officers with prior EEO lawsuits and targeted officers with protected activity. The VA found that Thurman committed *per se* reprisal in several cases. [PSOF ¶¶5-7] On the issue of retaliation alone, the Agency found Thurman violated officers' civil rights on at least eight occasions over five cases for acts occurring between 2011, the

---

[1] Plaintiff will refer to his Responses to Defendant's Statements of Fact as "PRSOF" and will refer to his Additional Statements of Fact as "PSOF".

year Thurman was hired, and 2013. [PSOF ¶¶8-12] In December 2013, African American officer Lawrence Green filed another EEO complaint against Thurman alleging discrimination and retaliation. After an investigation the VA found that Thurman had retaliated against Green. On June 24, 2015, Defendant suspended Thurman for 14-days for "conduct unbecoming a supervisor" and "Discrimination based on Reprisal for prior Equal Employment." [PSOF ¶13] In Defendant's 2015 proposed suspension letter the VA noted that the investigator specifically found that Thurman was not "trustworthy" and that "Mr. Thurman stated he will 'come after' those who file EEO complaints and use 'all of the money in the budget' to fight individuals who file them." [PSOF ¶14] In January 2013, Thurman proposed Leonard's removal for alleged conduct that, in part, occurred years before Thurman was even a VA employee. [PSOF ¶¶15, 23-25][2] Ricard was notified of Leonard's EEO complaint on July 5, 2012 after Thurman ended Leonard's mediation. [PSOF ¶7] Thurman's proposed removal letter raised four charges against Plaintiff. [PSOF ¶¶23-25] Thurman supplied all of the "evidence" for the removal to Human Resources ("HR") and told HR that he wanted to move forward with Leonard's removal. [PSOF ¶16] Leonard's response to the proposed removal, directed to Ricard, identified serious errors in the proposed removal and raised the issues of discrimination and retaliation as well comparators. Despite the issues Leonard raised in his response, Ricard did no investigation into his allegations, and sustained the removal in full. [PSOF ¶17] Leonard appealed his removal to the Merit Systems Protection Board ("MSPB"). [PSOF ¶18] At the hearing Thurman claimed he was unaware of Leonard's prior protected activity. Ricard claimed she first

---

[2] The Agency argues that, "Given that Leonard was a Criminal Investigator, it is hard to imagine how a finding that Leonard had attempted to manipulate the facts of investigations and that he was therefore a liability to all investigations and arrests he was involved with could result in anything other than removal—and Leonard's manipulation of investigations was only one of the multiple serious reasons for his removal." [Dkt. #57, p. 16] This argument is a blatant attempt to mislead this Court. Even a cursory review of the proposed notice of removal would reveal that Plaintiff was not charged with nor terminated for "manipulation of investigations." [PSOF ¶¶23-25; PRSOF ¶¶39, 50-51, 68]

became aware of Leonard's protected activity through his response to the proposed removal. However, Thurman was well aware of Leonard's prior protected activity because of the scuttled mediation and Ricard was notified of Leonard's discrimination claim on July 5, 2012. [PSOF ¶¶7 and 19] The Agency temporarily halted Thurman's 14-day suspension so that Thurman could testify on behalf of the VA at Leonard's MSPB hearing. [PSOF ¶¶13, 22] Despite being unaware that Thurman was serving a suspension for retaliation, the administrative law judge ("ALJ") noted, "The record demonstrates that Chief Thurman had an animus against participation in the EEO process. His comments at staff meetings that he would fight discrimination complaints and his efforts to identify those whom he believed profited from the EEO process indicate a hostility to those who sought a remedy under that process." The ALJ then found that Thurman's proposed removal of Leonard was motivated by retaliatory animus. [PSOF ¶26]

## III.    ARGUMENT

"[W]hen all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013); *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring)) The Seventh Circuit in *Ortiz* (citation) explained:

> "That legal standard… is simply whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself-or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered, and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect." *Id*. at 766.

Here there is more than enough evidence in the record to permit a reasonable juror to conclude that Plaintiff's race and prior protected activity caused the Agency to discharge him.

### A. There is ample evidence in the record to establish that Thurman proposed Plaintiff's removal because of Plaintiff's prior protected activity

The Agency claims that, "Leonard has no evidence that anyone who complained about his misconduct, investigated his conduct, or otherwise had any involvement in the circumstances leading to his removal was biased against him because of his race or prior protected activity." [Dkt. #57, p. 16] This is a patently false statement and is belied by the record in this case. There can be no dispute that Thurman issued the proposed notice of removal and compiled the accompanying evidence file that led to Plaintiff's termination. [PSOF ¶¶15] There can also be no dispute that without the proposed removal, Ricard could not have terminated Plaintiff. [PSOF ¶¶15-16] Yet, the Agency itself has determined that Thurman was a serial violator of Title VII from 2011 to 2013, finding that he retaliated against VA officers under his command no less than eight times over five different cases. [PSOF ¶¶9-14] The Agency even suspended Thurman for 14 days for retaliating against an officer under his command who had previously filed an EEO complaint against him. [PSOF ¶14] More importantly, the Agency found that Thurman had committed "*per se* reprisal" in response to Plaintiff's EEO complaint against Thurman where Leonard complained about Thurman's threats to VA Hines officers regarding their past EEO activity. [PRSOF ¶¶9 and 13; PSOF ¶¶6 and 10] Thurman even admitted that "I can tell you the majority of those recommended terminated or terminated from here have EEO complaints." [PSOF ¶36] There is every reason for a jury to conclude that Thurman's retaliatory actions and attitudes towards other officers and Plaintiff during the same time period as this case (retaliation that the Agency itself acknowledged) were at play in his investigating Plaintiff and proposing his removal. As the Seventh Circuit has found, evidence of a defendant's "behavior toward or comments directed at other employees in the [same] protected group" as the plaintiff's is relevant circumstantial evidence. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir.2008). Also, "evidence of

the decisionmaker's discriminatory motive regarding one employment decision may be used as evidence of that decisionmaker's discriminatory motive in making a similar employment decision." *Huff v. UARCO*, 122 F.3d 374, 386 (7th Cir. 1997). Because Ricard could not have terminated Plaintiff without Thurman issuing the proposed removal in retaliation for Plaintiff's EEO complaints, the Court can deny Defendant's motion for summary judgment on this basis alone.

### B. Ricard's affidavit is rife with lies and misrepresentations, further demonstrating pretext

In an apparent attempt to gloss over Thurman's pivotal role in terminating Plaintiff, the Agency relies almost exclusively on Ricard's affidavit. Yet her affidavit is repeatedly and materially contradicted by her prior sworn testimony and Thurman's prior sworn testimony. For example, the Agency cites to Ricard's affidavit for the proposition that she determined it was necessary to investigate the allegations contained in the September 5, 2012 OIG email from Nina Graves. [PRSOF ¶17] Yet, Thurman directly contradicts Ricard when he testified under oath that he asked the Human Resources Department at Hines VA to investigate the police department upon his arrival. *Id.* Also, Ricard testified under oath that it was the "chief's responsibility" to investigate such complaints. [PRSOF ¶26]

Ricard also claims that "Thurman was the source of only three documents that were contained in the evidence file." [PRSOF ¶51] This statement cannot be true. Thurman issued the proposed removal and selected and provided *all* of the evidence contained in the accompanying evidence file. *Id.* Ricard further asserts that Thurman did not provide any factual information or other input into Kolbe's investigation of the canteen investigation. [PRSOF ¶40] Yet, Thurman directly contradicts Ricard when he testified under oath that he directed Kolbe's investigation into the canteen incident. *Id*.

6

Incredibly, Ricard states, "Based on my review of all of the materials in the evidence file and Leonard's response to the notice of proposed removal, I determined that each of the charges in the notice of proposed removal was supported by a preponderance of the evidence, and I therefore sustained the charges." [PRSOF ¶69] However, when questioned in detail under oath about each charge of the proposed removal, Ricard either admitted that the allegations in the charges were contradicted by the facts in the evidence file or could not at all articulate why she sustained the charges. [PSOF ¶¶23-25, PRSOF ¶¶61-63, 68-69]

The Agency claims that "Neither Thurman nor Kolbe influenced Ricard's decision to remove Leonard from employment." [PRSOF ¶70] The Agency stretches the bounds of reason with this assertion. First and foremost, Ricard's own removal letter to Plaintiff states, "The Acting Chief, Police Service, has also recommended that I remove you." *Id*. Thurman was the singular influence over Ricard's decision to terminate Plaintiff's employment. There can be no dispute that Ricard could not and would not have had the chance to terminate Plaintiff if Thurman had not issued the proposed removal. *Id*. Thurman decided what was in the evidence file and decided what charges to level at Plaintiff in the notice of removal. *Id*. In other words, he decided exactly what Ricard saw and what Ricard didn't see. For example, he provided Ricard with an inexplicably altered version of Plaintiff's response to a letter of inquiry and also provided a redacted report from Officers Garrett and Foster which removed any references to investigations of other VA Hines officers. [PRSOF ¶¶70] Further, Thurman did not provide Ricard with any examples of comparators and did not inform Ricard that other VA Hines officers (such as Kolbe) had not drawn their weapons while on duty far more frequently then plaintiff. *Id*. Thurman also did not include anything in the evidence file that showed that John Bailey had almost three times as much overtime as Plaintiff. *Id*. Finally, Thurman did not include anything in the evidence file to show that both

Kolbe and Bailey had previously been found to have made false statements during investigations. *Id.* Thurman's editorial choices left Ricard only with Plaintiff's allegations about Kolbe as a comparator, which as established below, Ricard dutifully ignored.

The Agency further states that "Ricard has no knowledge of any other employees who committed the same or similar infractions as those collectively described in the notice of proposed removal that was issued to Leonard." [PRSOF ¶75] This is a complete falsehood. Ricard claims that she considered all of the "*Douglas* Factors" which require that she consider all comparators. *Id*. She further claimed that the Agency did not provide her with any comparators and that she did not ask for any comparators. *Id.* Plaintiff's written response, which Ricard claims to have "carefully considered," identified a clearly relevant comparator who had committed more serious violations than Plaintiff: Cary Kolbe. [PSOF ¶¶27-28] Finally, the Agency claims that, "Ricard did not consider Leonard's race or prior legally protected activity in making the removal decision." [PRSOF ¶73] However, Ricard was well aware of Plaintiff's race and protected activity prior to receiving the proposed removal from Thurman, but falsely claimed otherwise even though she had been notified of Plaintiff's July 5, 2012. [PRSOF ¶73] Where an employer's stated rationales are "sufficiently inconsistent or otherwise suspect," summary judgment cannot stand. *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013) However, these "explanations must actually be shifting and inconsistent to permit an inference of mendacity." *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003) Here, the Agency's explanations regarding Plaintiff's termination are not just shifting and inconsistent, they are bald faced lies. As such, summary judgment must be denied.

### C. Plaintiff meets the *Prima Facie* Requirements of a claim for race discrimination and retaliation.

A plaintiff may establish a *prima facie* case of race discrimination and retaliation by showing: (1) he is a member of a protected group or, for a retaliation claim, that he engaged in protected activity; (2) he satisfied his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Id.; Naficy v. Ill. Dep't of Human Servs*., 697 F.3d 504, 511 (7th Cir. 2012); *Metzger v. Illinois State Police*, 519 F.3d 677, 681 (7th Cir. 2008).

It is undisputed that Plaintiff is a member of two protected classes since he is African American and he engaged in protected activity [PSOF ¶¶1and 4] There is also no dispute that Plaintiff suffered an adverse action when the Agency terminated his employment. [PRSOF ¶74] The parties cross swords as to whether Plaintiff was meeting the legitimate job expectations of the Agency. However, the Seventh Circuit has repeatedly held that where plaintiff claims that his employer's legitimate expectations were disparately applied, the second and fourth elements of *prima facie* case of race discrimination are closely intertwined with pretext analysis, and the two inquiries may be merged and considered together. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 n. 8 (7th Cir.2003). *See Rodgers v. White*, 657 F. 3d. 511, 517 (7th Cir. 2012) ("When an African-American employee asserts that evidence exists to show that he was disciplined more severely than white employees who shared similar disciplinary issues, the second and fourth prongs of the indirect method merge. A *prima facie* case is made out if the evidence establishes "that the defendants extended leniency to similarly situated employees who engaged in similar conduct.")

Here, Plaintiff's *prima facie* case (prongs 2 and 4) and the pretext analysis collapse into one inquiry. In short, the question becomes: Is it more likely than not that other VA Hines Officers outside of Plaintiff's protected classes (in this case Caucasian police officers at VA Hines and

9

police officers at VA Hines who had not engaged in protected activity) who engaged in conduct similar to or worse than the conduct of which Plaintiff was accused, were treated more favorably than Plaintiff?[3] The answer to this question is an unequivocal and resounding "yes." Defendant's argument that there are "unsurprisingly no similarly situated employees who engaged in comparable misconduct and who were not removed" is false. [Dkt. #57, p. 16] VA Hines Officers Cary Kolbe ("Kolbe")[4] and John Bailey ("Bailey") both Caucasian and with no protected activity, engaged in far more serious conduct during the relevant time period, but the Agency did not investigate them or terminate them. [PSOF ¶¶3, 27-34; PRSOF ¶¶29, 31] In fact, the Agency subsequently promoted both Kolbe (to Leonard's former position as Criminal Investigator after Kolbe had threatened to kill Leonard) and Bailey. [PSOF ¶¶3, 27-28 and 32-33] The Agency's disparate treatment not only establishes Plaintiff's *prima facie* case of retaliation and discrimination but is also evidence of pretext. *See Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 770 (7th Cir. 1994) ("In order to demonstrate pretext under the *McDonnell Douglas* analysis, a plaintiff may put forth evidence that (1) employees outside of the protected class . . ., (2) who were involved in acts of comparable seriousness, (3) were nevertheless retained or rehired (while the plaintiff was not)."). Were Plaintiff Caucasian or if he had no protected activity, it is more likely true than not that Plaintiff would have been *promoted* rather than investigated and then terminated. After all, Kolbe was reported to have been drunk on duty, stalked and harassed a female VA employee, and was found to have threatened to "kill" the Plaintiff. [PSOF ¶27] Kolbe also tried to convince women to testify falsely against African American officer Larry Bailey and was known to have falsified

---

[3] The central question at issue is whether the employer acted on account of the plaintiff's race (or sex, disability, age, etc.). *Morgan v. SVC, LLC.*, 724 F.3d 990, 997 (7th Cir. 2013).

[4] The Seventh Circuit Court of Appeals has described Kolbe's record as "abysmal" and "sullied." *See Henderson v. Shulkin*, 2017 U.S. App. LEXIS 26351 **13-15, 23 (7th Cir. Ill., Dec. 22, 2017)],

and lied on police reports. *Id.* After all these serious offences, the Agency did not investigate Kolbe, the Agency did not propose his removal, and he was twice promoted by the Agency. [PSOF ¶28] Officer John Bailey was found to have falsified reports and he too was promoted by the Agency. [PSOF ¶33] Plaintiff was terminated for far less serious offenses.[5] Pretext is clear in this case and Defendant's motion for summary judgment should be denied.

### D. The "Cat's Paw" theory applies to Thurman's Proposed Removal of Defendant

In the employment discrimination context, the cat's paw theory of liability applies when "a biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Matthews v. Waukesha Cnty*., 759 F.3d 821, 828 (7th Cir.2014) In *Staub v. Proctor Hosp*., 562 U.S. 411, 415 n. 1, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011) the Supreme Court found that under a cat's paw theory there must be "some direct relation between the injury asserted and the injurious conduct alleged" that is neither "too remote, purely contingent, or indirect." *Id*. at 419, 131 S.Ct. 1186. The ultimate decision-maker's exercise of judgment alone does not render the subordinate's discriminatory animus "remote" or "purely contingent," but instead creates an additional proximate cause. *Id*. In other words, just because someone else has to make the ultimate termination decision does not remove the subordinate's discriminatory animus as a proximate cause. However, the Court noted there are acts that can change the subordinate's discriminatory animus from a proximate cause to a cause that is too remote to support cat's paw liability. As the Court said, even if there is an independent investigation, "the supervisor's biased report may remain a causal factor if the

---

[5] Only 3 of the 11 charges against Plaintiff were sustained by the ALJ at the MSPB. [PSOF ¶20]

11

independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.* at 421, 131 S.Ct. 1186.

In this case, it is undisputed that Thurman, whom the Agency has deemed a serial violator of Title VII, issued the notice of proposed removal and the evidence file that accompanied it. [PSOF ¶¶9-16] There is a material factual dispute between the parties as to whether Ricard, the ultimate decision-maker, made an independent investigation into whether Plaintiff's removal was entirely justified. The Agency claims that "Ricard conducted an independent review of the evidence provided in support of each of the charges against Leonard before determining for herself whether the charges were substantiated." [Dkt. #57, p. 14] As established above, however, under cross examination, Ricard could not provide any explanation as to how the charges were substantiated by the evidence file, severely undermining her claim that she conducted an "independent review."[6] [PSOF ¶¶23-25] Therefore, a jury could determine that Ricard merely rubber-stamped Thurman's retaliatory proposed removal based on an evidence file perfectly curated by Thurman to achieve his desired result: Plaintiff's termination. Under *Staub*, the "cat's paw" theory applies, and summary judgment should be denied.

## IV.     The ALJ's Decision Sustaining Leonard's Removal Must Be Reversed

The Agency argues that Plaintiff cannot sustain his burden that there was error in the ALJ's decision in upholding Defendant's unlawful termination of Plaintiff's employment. Plaintiff has

---

[6] Plaintiff is hard-pressed to determine what exactly the Agency means by "independent review." Is the Agency asserting that Ricard re-interviewed all of the witnesses, and/or reviewed documents outside of the evidence file? That cannot be the case, because the Agency knows that, as the deciding official, Ricard can only consider the charges in the notice of proposed removal, the evidence file and Plaintiff's response to the proposed removal. *See Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999)(It is constitutionally impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process)

fully addressed his claim for review of the ALJ's decision in his Petition for Review and will not waste the parties' or the Court's resources in repeating those arguments here. Instead, Plaintiff incorporates by reference each of his arguments put forth in his Petition for Review, Dkt. #58.

## V.    CONCLUSION

The Agency has already determined that Thurman has violated Title VII numerous times contemporaneous with the events of this case. A reasonable jury could certainly find that if Thurman was retaliating against other officers in 2012-2013, he was retaliating against Plaintiff when he had him investigated and subsequently issued a flimsy proposed removal. The Agency attempts to shield itself from Thurman's obvious discrimination and retaliation by claiming that Ricard conducted an "independent review" of the evidence provided in support of each of the charges against Plaintiff.  The Agency doesn't explain how Ricard's review was "independent" except to state that she "carefully considered" the charges against Plaintiff that were prepared by Thurman, the evidence file prepared by Thurman and Plaintiff's response, before deciding to terminate Plaintiff's employment. However, when asked under cross examination, Ricard could not provide any explanation as to how the charges were substantiated by the evidence file. Further, Ricard admits that she did not consider any comparators as identified by Plaintiff in his response to the proposed removal. Those comparators, Kolbe and John Bailey, establish that Plaintiff's stated reasons for terminating Plaintiff were pretextual.  For the foregoing reasons, Plaintiff requests that this Court deny Defendant's motion for summary judgment.

Respectfully Submitted,

MICHAEL LEONARD

*/s/ Philip Stephens Holloway*
Philip S. Holloway
Attorney for Complainant

Philip Stephens Holloway
Justin G. Randolph
RANDOLPH & HOLLOWAY, LLC
53 W. Jackson Blvd., Suite 1234
Chicago, Illinois 60604 (312) 663-1560
philipholloway@aim.com