**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL LEONARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 17 C 09259 |
| | ) | |
| **DOUGLAS A. COLLINS, as Secretary,** | ) | **Judge Rebecca R. Pallmeyer** |
| **U.S. Department of Veterans Affairs,** [1] | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Leonard was fired from his longtime job as a law enforcement officer at the U.S. Department of Veterans Affairs ("VA") in 2013. Leonard claimed he was terminated in retaliation for having filed a claim of race discrimination with the Equal Employment Opportunity Commission ("EEOC") (*see* Summ. J. Order [92] at 17–21) and sought relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (*Id.*) A jury found in favor of Leonard, concluding that retaliatory animus or motive "played a part in" Leonard's termination and that Leonard would not have been terminated but for the retaliatory animus; the jury awarded Leonard $100,000 in compensatory damages for emotional distress.[2] (Jury Verdict at 2–3 [141].) As a result of the jury's findings, Leonard is also presumptively entitled to back pay, though he bears the burden to establish the proper amount for the award. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003).

---

[1] David J. Shulkin, the named Defendant when this suit was initiated, is no longer Secretary, U.S. Department of Veterans Affairs. Douglas A. Collins was sworn in as Secretary, U.S. Department of Veterans Affairs on February 25, 2025.

[2] The court instructed the jury that in calculating damages, it "should only consider the mental/emotional pain and suffering that Plaintiff has experienced and is reasonably certain to experience in the future." (Jury Instructions [139] at 17.) Any damages for past or future lost wages and benefits, the court explained, were for the court to calculate and determine. (*Id.*) The parties are currently engaged in limited discovery and briefing on the back pay issues. ([150].)

At the close of trial evidence, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on Leonard's claim for compensatory damages. Defendant argued that Leonard, whose trial testimony was cut short for medical reasons, presented the jury with no competent evidence to support such an award. The court reserved ruling on the motion, and Defendant has now timely renewed it. (*See* Mot. [142] at 2, 7.) For the reasons explained below, Defendant's motion is granted, and the jury's award of compensatory damages is vacated.

## BACKGROUND

Leonard's trial was unusual in that the jury heard almost no live testimony from the Plaintiff. On the first day of proceedings, Leonard began his direct testimony but soon experienced a medical issue that forced him to step down from the witness stand. Leonard was ultimately unable to offer any further testimony at trial. Counsel for both parties agreed that Leonard's prior sworn testimony—given in a July 2015 hearing conducted by the Merit Systems Protection Board ("MSPB") and in a May 2019 deposition—would be read into the record in lieu of live testimony. (*See generally* Leonard MSPB Hr'g Tr. [145-2]; Leonard Dep. [145-1].)

In that earlier testimony, Leonard had not described having experienced "mental suffering, humiliation, embarrassment, or pain," and "did not present the jury with any testimony from friends, family members, medical providers, or other witnesses who could attest to any emotional distress or mental harm that [Leonard] might allege to have experienced." (Mot. at 3; Pl. Resp. [145] at 4.) Leonard also acknowledged in his deposition that he never sought any mental health treatment in connection with his removal from the VA. (Leonard Dep. at 121:4–7.) Leonard nonetheless maintains that he presented enough evidence to support the jury's award. The court summarizes below the relevant evidence highlighted by Leonard, adding in small bits of context while bearing in mind that the court must construe the trial evidence "strictly in favor" of Leonard in considering the Defendant's motion. *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018) (internal citations omitted).

2

Leonard worked at the VA for about 25 years before being fired. (Leonard Dep. at 31:6–9 (Leonard began working at the VA in 1987), 15:24–25, 26:3–6 (Leonard's employment with the VA ended in March 2013).) During that span, Leonard testified, he was promoted several times, first from a patrolman to a detective, then to a "detective instructor," and finally to a "criminal investigator," the position he held when he was terminated. (Leonard MSPB Hr'g Tr. at 267:1–6.) Leonard was proud of his career advancement, which he attributed to having "worked [his] butt off, and [believing] in teamwork and the system." (*Id.* at 331:13–18.) Leonard did not testify concerning the salary he earned at the VA, or the full range of employee benefits he received, though he appears to have received health insurance through the VA. (*See* Leonard Dep. at 13:8–13.)

At the MSPB hearing (where Leonard unsuccessfully appealed his termination), Leonard characterized the charges of misconduct against him as "ludicrous." (*Id.* at 330:9.) The investigation of those charges, he noted, was led by another VA law enforcement officer, Cary Kolbe, who Leonard claimed had previously threatened to kill him after a December 2011 confrontation between the two men. (*See* Leonard Dep. at 61:8–63:13, 65:2–22.) Those circumstances, in Leonard's view, made it "inappropriate" for Kolbe to be assigned to conduct the investigation. (*Id.* at 65:23–25.) It appears that at some point between Leonard's firing and his MSPB hearing, Kolbe was appointed to the position Leonard had held as criminal investigator at the Edward Hines, Jr. VA Hospital in Hines, Illinois. (MSPB Hr'g at 330:13–14.) Leonard now argues that he testified about "his outrage and confusion about his termination" (Pl. Resp. at 6), but he did not use that language to describe his emotional state in the MSPB testimony.

At his deposition, Leonard explained that at some point in 2014, he secured a position as a security officer at a company called All Points Security and Detective Agency ("All Points"). (*See id.* at 8:7–14, 9:10–16.) Before starting that job, however, Leonard had been without a full time job for about a year and a half, instead performing menial jobs at the church where he served as a deacon, including, in his telling, "carpentry work, demolition work with certain buildings that

the church was involved with, [and] counseling as far as the programs that they acquired, summer programs with the kids." (*Id.* at 13:20–14:3.) Leonard estimated he earned no more than $3,000 in total for these tasks. (*Id.* at 15:12–19.)

When he started work as a security officer for All Points in late 2014, Leonard recalled, he earned "[m]inimum wage . . . it had to be around $12 an hour or something like that."[3] (*Id.* at 9:10–15.) Within a year, Leonard was promoted to the position of "site supervisor," with his hourly pay increasing "slightly" to "[m]aybe $12.15." (*Id.* at 8:2–6, 10:2–11.) A year later, he was again promoted to the rank of "field supervisor," a salaried position paying "around 25, $26,000 a year." (*Id.* at 10:15–18, 11:2–10.) By the time of his deposition in May 2019, Leonard was earning about $35,000 per year at All Points. (*Id.* at 11:13–16.) Because All Points offered no employee benefits, Leonard was insured through his wife's health insurance plan.[4] (*Id.* at 10:13–14, 13:4–13.)

## DISCUSSION

Compensatory damages for emotional distress must be "supported by competent evidence." *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985) (citing *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). As the Supreme Court explained in *Carey v. Piphus*, emotional distress is "customarily proved by showing the nature and circumstances of the wrong *and* its effect on the plaintiff." 435 U.S. at 263–64 (emphasis added). "Neither the likelihood of

---

[3]     The minimum wage in Chicago and throughout Illinois at that time was, in fact, only $8.25 per hour, though the jury did not hear evidence to that effect. Bill Chappel, *Chicago Council Strongly Approves $13 Minimum Wage*, NPR (Dec. 2, 2014, 2:02 PM ET) https://www.npr.org/sections/thetwo-way/2014/12/02/368026116/chicago-council-strongly-approves-13-minimum-wage (last visited April 7, 2025).

[4]     Leonard testified at his deposition that his wife, a nurse, was the "director of labor and delivery" at Adventist Hospital in Bolingbrook, Illinois, though it was not clear from his testimony whether she already held the director position at the time Leonard was dismissed by the VA. (Leonard Dep. 13:1–19.) Leonard and his wife have four children; at the time of Leonard's deposition in May 2019, they were aged 40, 36, 26, and 22, and only the youngest still lived with Leonard and his wife. (*Id.* at 4:18–5:1.)

such an injury" having occurred nor "the difficulty of proving it," the Court held, "is so great as to justify awarding compensatory damages without proof that such injury actually was caused." *Id.* at 264. Accordingly, the Seventh Circuit announced in *Biggs v. Vill. of Dupo* that it requires plaintiffs to "show 'demonstrable emotional distress,'" not just point to circumstances of the violation which "might support an inference of such injury." 892 F.2d 1289, 1305 (7th Cir. 1990) (quoting *Rakovich v. Wade*, 819 F.2d 1393, 1399 (7th Cir. 1987)); *accord Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000).

Further, "when the injured party provides the sole evidence of mental distress, he must reasonably and sufficiently explain the circumstances of his injury and not resort to mere conclusory statements." *Biggs*, 892 F.2d at 1304 (quoting *Rakovich*, 819 F.2d at 1399 n.6). In *Nekolny v. Painter*, the plaintiffs were three employees of Lyons Township, Illinois, who were found by a jury to have been fired in retaliation for campaigning against the township supervisor in the previous election, a violation of their First Amendment rights. 653 F.2d 1164, 1165 (7th Cir. 1981). The only evidence the three plaintiffs presented of emotional distress, however, was their own testimony that they were "very depressed," "a little despondent and lacking motivation," and "completely humiliated" by their dismissals. *Id.* at 1172. The jury entered modest awards ($5,000, $2,500, and $2,500) for the plaintiffs' mental and emotional distress. *Id.* at 1166. But the Seventh Circuit reversed those awards, concluding that the evidence was "insufficient to constitute proof of compensable mental or emotional injury," as plaintiffs' bare statements were inadequate even when considered along with the facts of the case. *Id.* at 1172–73. Similarly, in *Biggs*, the plaintiff—who had been a part-time police officer with the Village of Dupo, Illinois for 14 years— was fired by Village officials in retaliation for speech protected by the First Amendment: criticizing local politicians in an interview Biggs gave to a newspaper reporter. 892 F.2d at 1299–1300. The only direct evidence of emotional distress Biggs provided was his testimony that he was "affected emotionally by being fired," and that he was concerned by "the idea of [his] family going through it." *Id.* at 1304. That evidence, the Seventh Circuit held, was insufficient as a matter of law to

5

support an award of damages for emotional distress, finding Biggs's testimony to be "as conclusory as that held insufficient in *Nekolny*."[5]  *Id.* at 1305.

Leonard correctly notes that he was not required to use particular "magic words" to describe his emotional distress in order to recover.  (Pl. Resp. at 4.)  But Leonard's testimony did not describe his emotional distress in *any* terms, and he otherwise offered no testimony from a physician or mental health professional, or even family or friends, to that effect.  In other words, the jury heard no direct evidence of the effect that the VA's unfair treatment of Leonard had on his emotional state.

Leonard has not presented any cases in which a plaintiff has been able to recover damages for emotional distress without offering direct evidence of that distress.  Leonard nevertheless contends that his testimony regarding the circumstances of his termination and its aftermath support such an award, namely, that (1) Leonard was fired from a long-time job as a law enforcement officer at the VA that he took pride in and where he had earned several promotions through hard work; (2) Leonard was dismissed based on misconduct charges he believes were "ludicrous"; (3) the charges against Leonard were investigated a colleague who allegedly had once threatened to kill Leonard and appears to have won Leonard's job after his termination; (4) Leonard did not secure full-time work for about a year and a half, during which he earned only a small amount of money performing odd jobs at the church where he served as a deacon; and (5) when Leonard did find full-time work as a security guard, his wages started at

---

[5]        As Leonard points out, the Seventh Circuit in *Biggs* did not vacate the damages award below but rather held that the defendants were entitled to a new trial on damages unless the court could determine an appropriate remittitur and Biggs accepted.  (Pl. Resp. at 6 (citing *Biggs*, 892 F.2d at 1305).)  But the reason a new trial or remittitur was necessary in *Biggs* was that, as Leonard himself acknowledges, the jury in *Biggs* had been instructed to consider both the plaintiff's emotional distress *and* "the value of salaries lost and the present cash value of the salaries reasonably certain to be lost in the future" in determining compensatory damages. 892 F.2d at 1304; (*see also* Pl. Resp. at 6.)  The new trial in *Biggs* would have been for the jury to compute damages due to lost wages.  Here, the jury was instructed not to consider lost wages or benefits in calculating its award of compensatory damages.

around $12 per hour and the position did not offer benefits, forcing Leonard on to his wife's health insurance plan.

As Leonard points out, in *United States v. Balistrieri*, the Seventh Circuit stated that courts "must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused that distress." 981 F.2d 916, 932 (7th Cir. 1992). The *Balistrieri* court further mused that humiliation could be "inherent in the circumstances" of a case, and that "[t]he more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action." *Id.* at 933–34. Leonard also directs the court's attention to *Seaton v. Sky Realty Co., Inc.*, where the court wrote that "[h]umiliation can be inferred from the circumstances as well as established by the testimony." 491 F.2d 634, 636 (7th Cir. 1974).

Although the passages quoted above appear favorable to Leonard's cause when read in isolation, *Balistrieri* and *Seaton* do not support his position, particularly when read against the backdrop of other Seventh Circuit cases on the topic. In *Balistrieri*, the court indeed upheld a jury's award of damages for emotional distress to the plaintiffs, fair housing "testers" who encountered racial discrimination while posing as customers—but these plaintiffs had testified to feeling "angry and upset," "cautious and on edge," "nauseous, embarrassed, and ashamed," "hurt and disappointed," having "a sense of helplessness and fear," and experiencing "a disbelief and kind of a hurt feeling" as a result of the treatment they endured. 981 F.2d at 931. And while the *Balistrieri* court noted that the Seventh Circuit had occasionally upheld emotional distress damages awards "despite the lack of detailed description of that distress," it noted that the plaintiffs in all those cases, including *Seaton*, had been denied housing because of their race. *Id.* at 932. And critically, the plaintiffs in all of these cases had also offered at least some testimony describing their emotional distress. *See Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252, 256–57 (7th Cir. 1987) (plaintiff testified that she had "looked differently" at her coworkers and the general public after the incident and became "self-conscious," while the rejection "caused

changes" in the "attitudes and aspirations" of two minor plaintiffs "because of their increased self-consciousness about their racial status"); *Crumble v. Blumthal*, 549 F.2d 462, 467 (7th Cir. 1977) (plaintiff testified he was "humiliated and embarrassed" by the defendant's conduct); *Seaton*, 491 F.2d at 636–638 (plaintiff testified he was "humiliated" and "intimidated, not only as a person but as a man," and that the offending realtor had stripped him of his "right as a father" to his children, who were present and witnessed the discrimination).

In this court's view, *Balistrieri* and *Seaton* do not establish that plaintiffs may sometimes recover emotional distress damages based only on testimony from which a jury might infer emotional distress. An award supported solely by a perceived likelihood that the plaintiff suffered emotional distress, or solely by the jury's inference that the plaintiff suffered emotional distress, is what the Supreme Court's decision in *Carey* and the Seventh Circuit's decision in *Biggs* seem to prohibit.[6] *See* 435 U.S. at 264; 892 F.2d at 1305. Rather, this court reads *Balistrieri* and *Seaton* as standing for the proposition that when the defendant engages in conduct as inherently degrading to the victim as race discrimination, "somewhat more conclusory evidence of emotional distress"—for instance, the plaintiff's own, limited testimony as to how the violation made them feel—"will be acceptable to support an award for emotional distress." *Balistrieri*, 981 F.2d at 932; *compare with Alston*, 231 F.3d at 388–389 (denial of a hearing before plaintiff was terminated from his job was not the type of inherently degrading conduct that would portend emotional distress). As the *Balistrieri* court discussed, this factor distinguished *Nekolny*, a First Amendment retaliatory firing case, from *Seaton*. Though the plaintiffs' limited testimony as to their distress in each case was "not qualitatively much different," the circumstances in *Nekolny* did "not approach

---

[6]        Leonard argues that *Biggs* is distinguishable from his case "on several grounds," including that *Biggs* was a "First Amendment" case, that the plaintiff was only a part-time police officer, and that the plaintiff's testimony did not feature a character analogous to Kolbe in this case. (Pl. Resp. at 6.) But *Biggs* was a case where, like Leonard, the plaintiff was fired in retaliation for engaging in protected activity. Moreover, Leonard has not explained why he believes that the holding of *Biggs*— that plaintiffs must do more than point to circumstances that might support an inference of emotional distress in order to recover such damages—is cabined to the specific facts of that case.

the egregiousness of those found in *Seaton*," *Balistrieri*, 981 F.3d at 932, where the plaintiff had

been "subjected to a racial indignity," one of the "relics of slavery." *Seaton*, 491 F.2d at 636 (citing

*Jones v. Mayer Co.*, 392 U.S. 409, 441–42 (1968)).

Leonard is a Black man, and he had initially alleged in this case, as in his prior EEOC

complaint, that he had been subjected to race discrimination at the VA—however, at summary

judgment, this court concluded that Leonard had presented "no admissible evidence that race

discrimination played a role in his removal." (Summ. J. Order at 24.) Consequently, the parties

stipulated to exclusion at trial of any evidence or argument regarding Leonard's allegations of

race discrimination. ([118] at 1–2; [126] at 2.) The court need not decide whether a retaliatory

firing, in and of itself, is as inherently degrading as racial discrimination. The court holds only that

the law does not support an emotional distress award where the fired employee offers no more

than limited testimony describing his emotional state—and here, Leonard's testimony did not

describe his distress even in that limited sense.

Leonard also contends that the Seventh Circuit's decision in *Tullis v. Townley Eng'g &

Mfg. Co., Inc.*, 243 F.3d 1058 (7th Cir. 2001) militates in his favor. Though there are a few

similarities between the cases, the comparison is inapt for a simple reason: the plaintiff in *Tullis*

testified as to his emotional distress, and Leonard did not. In *Tullis*, a jury found the defendant

company liable for firing the plaintiff in retaliation for his exercising his rights under the Illinois

Workers' Compensation Act and awarded the plaintiff just over $80,000 in damages for emotional

distress. *Id.* at 1062. Tullis failed to present testimony from a physician or other professional or

even a family member speaking to his emotional distress. *Id.* at 1066–67. He did, however, offer

testimony of his own. The defendant's conduct, he said, had made him feel "totally degraded"

and "back-stabbed." *Id.* Tullis testified that after his retaliatory discharge, he was without full-

time work for nine or ten months and found only "odd and end jobs," earning him approximately

$600 to $700 during that span. *Id.* at 1068. During this span, Tullis was forced to borrow money

from friends and relatives to get by, and even then, fell behind on child support and had trouble

keeping his utility bills paid, which resulted in his phone, lights, and gas being shut off at times. *Id.* Tullis also described being unable to buy new school clothes for his children or take them to Wal-Mart or McDonald's for shopping and dining. *Id.* at 1067.

In his briefing, Leonard implies that the jury heard testimony regarding his financial struggles in the wake of dismissal from the VA. (*See* Pl. Resp. at 6 (arguing that he, unlike the plaintiff in *Biggs*, offered testimony about "financial struggles after his termination"), 7 (offering that "having to perform minimum wage employment . . . would be devastating financially.")) Like the plaintiff in *Tullis*, Leonard was without full time work for a stretch and performed odd jobs for a small amount of money—but Leonard has not identified any specific testimony concerning financial struggles either in the period immediately following his dismissal from the VA or later after he started as a security guard at All Points. Indeed, Leonard's testimony did not touch on the difference between his salary at the VA and All Points at all. More importantly, the critical fact remains that Leonard's prior testimony did not describe the effects of his dismissal or its aftermath on his emotional state, whether due to financial difficulties or otherwise.

## CONCLUSION

For the reasons stated above, Defendant's motion [142] is granted, and the jury's award of compensatory damages to Plaintiff is vacated. As the court has recognized, Leonard is presumptively entitled to an award for lost pay and benefits. Given the length of time between Leonard's dismissal from the VA and the jury's verdict, the award could potentially be substantial. The parties are encouraged to discuss the possibility of settlement.

ENTER:

Dated: April 10, 2025

_____
REBECCA R. PALLMEYER
United States District Judge