**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL LEONARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17 C 9259** |
| | ) | |
| **DOUGLAS A. COLLINS, as Secretary, U.S. Department of Veterans Affairs,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2017, Plaintiff Michael Leonard sued the U.S. Department of Veterans Affairs ("VA" or "the government") for unlawful discharge, in violation of Title VII of the Civil Rights Act of 1964. A jury returned a verdict in his favor, and the court awarded Leonard backpay and prejudgment interest of $812,342.47. To reach this damages figure, the court assumed Leonard would have remained employed at the VA from March 8, 2013 (when he was terminated) until January 27, 2025 (when he testified at trial). (Order [187] at 4.)

In addition to backpay and prejudgment interest, Leonard has asked the court to award him a "tax-component" amount to "offset the increased tax burden" he will face from receipt of a lump sum judgment. (Pl. Br. [159] at 11.) Leonard did not provide a calculation of the appropriate offset, however, nor did he provide the basis on which the court could perform the calculation, were it so inclined. (Order [187] at 15.) District courts have discretion to award additional funds to offset increased taxes, but courts are expected to "show their work" and explain their calculation of any tax award. *E.E.O.C. v. N. Star Hosp., Inc.*, 777 F.3d 898, 904 (7th Cir. 2015). Lacking sufficient information to determine an award, the court denied Leonard's request without prejudice to an appropriate motion.

Leonard responded to the court's order in August 2026 with a renewed motion requesting a tax-component award of $160,485. (Pl. Renewed Mot. [189] at 1.) Again, however, Leonard

has not provided the basis for his calculations. The government pointed this out in an opposition it filed nearly two months ago, to which Leonard has not responded. Having afforded Leonard's attorneys two opportunities to provide support for the award he seeks, the court declines to grant a third. The request for a tax component award is denied.

## DISCUSSION

Leonard contends that he will face a substantial tax burden from receipt of backpay in a lump sum. To determine the size of this burden, the court would need to determine the difference between the tax amounts Leonard paid in each year since his termination, and the amount he would have paid, had he remained employed. The best place to start, then, would presumably be examination of Leonard's annual tax returns from 2013 to 2025. Instead of taking his straightforward step,[1] Leonard has offered estimates of the taxes paid on his substitute earnings using what he has identified as a proposed "average" tax rate. (*See* Pl. Calculations [189-1] at 4.) And even that proposed calculation is incomplete: as explained below, Leonard has provided no information concerning his wife's earnings, which would presumably have had an impact on his tax obligations between 2013 and 2025.

These uncertainties aside, the parties generally agree on the method of calculation for Leonard's federal and state tax obligations. (Def. Opp. to Pl. Renewed Mot. [191] at 1–2.) That method also comports with this district's prevailing methodology: find the difference between (1) the graduated tax Leonard would have paid if he received his lost wages annually between 2013 and 2025 and (2) the tax Leonard will pay for the same wages awarded as a single lump sum.

---

[1] The court recognizes there can be difficulties in obtaining tax returns dated back to 2013. Leonard could, however, have obtained transcripts for his taxes from the past seven years. *See* Internal Revenue Service, *Form 4506, Request for Copy of Tax Return* (2025), https://www.irs.gov/pub/irs-pdf/f4506.pdf (last visited Oct. 6, 2026). Leonard also could have provided bank or credit card statements, coupled with an affidavit confirming his tax payments from 2013 to 2025. If such records for whatever reason were unavailable, Leonard could perhaps have presented expert testimony about his tax obligations for the relevant period, factoring in his wife's income and any other revenue sources. There is no evidence that Leonard took any of these steps.

*Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1265 (N.D. Ill. 2015), *aff'd*, 842 F.3d 1010 (7th Cir. 2016). The court also subtracts from this calculation the taxes Leonard paid on his substitute earnings each year between 2013 and 2025. (Pl. Calculations [189-1] at 3–4.) This approach is reflected in the formula proposed by the government:

$$\textbf{Tax Component Award} = \mathbf{A} - \Sigma\,(\mathbf{B_t} - \mathbf{C_t})$$

where **A** = Plaintiff's 2026 estimated tax liability;
**B** = Plaintiff's "but for" tax liability in each year between 2013 and 2025;
**C** = Plaintiff's actual taxes already paid on his substitute earnings each year between 2013 and 2025; and
**t** = Each year between 2013 and 2025.

(Def. Opp. to Pl. Renewed Mot. [191] at 2.)

The court begins with Leonard's federal tax estimates between 2013 and 2025. Again, without consideration of the tax returns themselves, Leonard has instead estimated his federal tax burdens for each year during the relevant period by multiplying his actual earnings for the year by the married-filing-jointly tax rate for that year. He then compared that figure with the amount he estimates that he would have paid, had he remained employed by the VA. These calculations are problematic for two obvious reasons: First, Leonard has employed a gross income figure, rather than a taxable income figure, to estimate both his lump sum liability (**A**) and "but for" yearly tax liability (**B**). This gross income figure does not include deductions, which the court presumes he would have claimed in each relevant year.[2] The court could, perhaps, have accounted for

---

[2] For instance, for the federal tax estimate of his lump sum payment, Leonard multiplies his $812,342.47 backpay award by the IRS married-filing-jointly tax table rate for 2026. But if Leonard files his taxes jointly with his wife in 2026, he will at least be eligible for the standard deduction for joint filers: $32,200. *Publication 505 (2026), Tax Withholding and Estimated Tax*, Internal Revenue Serv., https://www.irs.gov/publications/p505 (last visited Oct. 13, 2026). Furthermore, because Leonard and his wife are over the age of 65, they both may claim an additional $1,650 deduction. *See id.* Leonard gives no indication that he accounted for any of these deductions.

The estimates of Leonard's yearly tax liability are also incomplete. For example, in 2013, couples with a married-filing-jointly filing status were eligible for a standard deduction of $12,200. Internal Revenue Service, *Publication 501, Exemptions, Standard Deduction, and Filing Information* 26 (2013), https://www.irs.gov/pub/irs-prior/p501--2013.pdf. Leonard fails to factor in deductions for any year during the relevant 2013–2025 period.

these deductions on its own if there were no other errors, but as the government has pointed out, (Def.'s Opposition [191] at 4), although Leonard has employed the IRS married-filing-jointly tax tables, he has made no mention of his wife's income. Leonard previously testified that his wife worked as a nurse, supervising the labor and delivery department at Adventist Hospital in Bolingbrook, Illinois. (Leonard Dep. [159-12] at 13:14–19.) The court has no information about her earnings in that capacity, but surely those earnings would have had an impact on the amounts Leonard paid between 2013 and 2025.[3] And as noted, the calculations are flawed for yet another reason: he has not accounted for amounts he earned at the VA prior to the date of his termination in 2013 (approximately $12,891.88), nor has he made mention of any Social Security income he or his wife received beginning in 2013. (*See* Order [187] at 6.)

Leonard's estimations of his state tax burden are similarly flawed. Leonard reaches his state tax award figure by calculating an average Illinois tax rate from 2013 to 2025, multiplying that rate by his earnings, then subtracting his substituted earnings, which are multiplied by the same rate.[4] (Pl. Calculations [189-1] at 2, 4.) Here, too, such calculations would be unnecessary if Leonard had instead presented his tax returns. Worse, the calculations are incorrect. The court is uncertain how Leonard reached his 4.727% tax rate estimate, but under Leonard's own model, the correct average Illinois state tax rate between 2013 and 2025 is 4.68%.[5] This error skews

[3] As an example to demonstrate the potential impact of Leonard's wife's income on his tax award, the government offers the American Nurses Association's 2013 median salary for a nurse located in Illinois: $64,900. *Nursing Job Growth and Salaries by State – 2013*, Am. Nursing Ass'n, https://www.nursingworld.org/globalassets/practiceandpolicy/workforce/jobs-salaries_bystate_bls_2013_forweb.pdf (last visited Oct. 13, 2026). The court will not use public data to estimate Leonard's wife's income, but it recognizes that the addition of the median nurse's estimate earnings would likely bump Leonard and his wife into a higher marginal tax bracket. Leonard's tax estimates therefore are likely overinclusive.

[4] For example, Leonard multiplies his expected earnings and substituted earnings by his self-estimated tax rate, then calculates the difference between those figures: ($1,004,151.80 x .04727 = $47,466.00) – ($423,632.00 x .04727 = $20,025.00) = $27,441. (Pl. Calculations [189-1] at 4.)

[5] Leonard purports to use the average Illinois tax rate from 2013 to 2025, calculated based on current and historic rates publicly listed by the Illinois Department of Revenue: 4.727%. (Pl. Calculations [189-1] at 4.) The government and the court calculate a different blended

Leonard's state tax estimates for the entire 13-year period. And, as before, his post-hoc calculation of his state tax liability does not account for his wife's earnings or for any other additional income, such as Social Security payments. The court needs a full picture of Leonard's household income, based on some reliable evidence, to "show [its] work" and determine a proper award. *E.E.O.C. v. N. Star Hosp., Inc.*, 777 F.3d at 904.

In short, rather than taking the obvious step of presenting the court with copies of his tax returns (which would reveal his wife's income, any alternate sources of income, and the taxes he actually paid), Leonard has asked the court to rely on his estimates, which omit standard deductions that he certainly would have claimed, and to completely ignore significant additional sources of revenue, like his wife's earnings. The court declines to do so. Leonard has not calculated, and the court itself cannot calculate, a tax-component award that properly reflects Leonard's "but-for" financial situation from 2013 to 2025. Leonard has had ample opportunity to address these issues. The court declines to address this issue further.

## CONCLUSION

For these reasons, the court denies Leonard's Renewed Motion for Tax-Component Award [189]. The Clerk is directed to enter judgment in the amount of $812,342.47.

ENTER:

Dated: October 15, 2026

REBECCA R. PALLMEYER
United States District Judge

---

average tax rate for 2013 to 2025: 4.68%. *See Income Tax Rates*, Ill. Dep't of Revenue, https://tax.illinois.gov/research/taxrates/income.html (last visited Oct. 13, 2026).